UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| X.D. Jr., *by his mother and father as next friends, Vanessa De Leon and Xavier Duran*, <br>         Plaintiff, <br><br> v. <br><br> TOTALLY KIDS LEARNING CENTER and PATRICIA ARREDONDO, <br>         Defendants. | Civil Action No. 1:24-cv-051 |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Plaintiff X.D. Jr. ("X.D.") sued Defendants Totally Kids Learning Center ("TKLC") and Patricia Arredondo[1] for disability discrimination under § 504 of the Rehabilitation Act of 1973 and Chapter 121 of the Texas Human Resources Code. Dkt. No. 1 (X.D.'s "Complaint"). Pending before the Court is Defendants' "Motion to Dismiss Plaintiff's Original Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim" (Defendants' "Motion"). Dkt. No. 15. Although Defendants' Motion has merit, for the reasons provided below, the undersigned recommends that the Court: (1) **DENY** Defendants' Motion; and (2) **GRANT** X.D. leave to amend his Complaint.

### I.      BACKGROUND AND PROCEDURAL HISTORY

X.D., a two-year old with Down syndrome, attended TKLC, a daycare owned by Arredondo. Dkt. No. 1 at 1. In October 2023, X.D. was hospitalized for respiratory issues.

---

[1] According to Defendants, the "correct identity and spelling of Defendant is 'Patricia Arellano d/b/a Totally Kidz Learning Center.'" Dkt. No. 15 at 6. However, the undersigned will address the parties as they are designated in the case style.

*Id.* at 2. Once treated, X.D. returned home with medicine and a nebulizer. *Id.* X.D.'s mother, Vanessa De Leon, advised staff at TKLC about the medication and provided them with treatment instructions. *Id.* De Leon alleges that when she picked X.D. up from TKLC, a staff member assured her X.D. had received his medicine and treatment. *Id.* at 3. Three days later, De Leon found the medicine in X.D.'s backpack, unopened. *Id.* De Leon notified Arredondo of the medication error. *Id.* Arredondo mentioned that five children had been sick that day, and that the teachers "must have gotten mixed up." *Id.* De Leon alleges Arredondo said X.D. "was no longer welcomed at the daycare," and that she "accommodated X.D. many times and could no longer have the child at the daycare because he needs attention." *Id.* Arredondo said she needed a special license to take care of special needs kids and "could get in trouble because X.D. was in the baby room." *Id.* De Leon requested that Arredondo put in writing that TKLC needed a special license for X.D. to attend. *Id.* Arredondo allegedly responded that after speaking with and receiving advice from friends who own daycares, she would not put those facts in writing because she would get in trouble. *Id.* at 3.

On April 10, 2024, De Leon and X.D.'s father, Xavier Duran, filed a complaint as next friends on behalf of X.D. Dkt. No. 1. The Complaint alleges that Defendants discriminated against X.D. because of his disability by "failing to give him the equal amount of importance when it came to giving him his prescribed medicines" and "excluding him from the educational programming it offers to other non-disabled children." Dkt. No. 1 at 5. X.D. seeks equitable relief in the form of a declaratory judgment, and De Leon and Duran seek compensatory damages. *Id.* at 7–8.

On May 30, 2024, Defendants moved to dismiss X.D.'s Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), raising three arguments. Dkt. No. 15; *see*

Fed. R. Civ. P. 12(b)(1), (6). First, Defendants argue the Court lacks subject matter jurisdiction over X.D.'s claim because X.D. lacks standing to bring suit. Dkt. No. 15 at 8. Second, Defendants argue that even if standing exists, X.D. failed to state a claim on which relief can be granted. *Id.* Third, Defendants argue that the Court should decline to exercise supplemental jurisdiction over X.D.'s state law claim if his federal claim is dismissed. *Id.*

On July 1, 2024, X.D. responded to Defendants' Motion, contending that the Complaint pleaded sufficient facts to support standing and state a claim under the Rehabilitation Act. Dkt. No. 19 at 2. Were the Court to find the facts pleaded insufficient, X.D. requests, in the alternative, an opportunity to amend his Complaint. *Id.* at 12, 14–15.

On July 8, 2024, Defendants filed a Reply in Support of their Motion, in which they argue X.D.'s Response to the Motion "does little to help clear up the muddy allegations of the Complaint." Dkt. No. 23 at 2. Defendants continue, "While Plaintiff's counsel attempts in the Response to flesh out some of the pleading deficiencies in the Complaint by adding details, this is not an appropriate way to amend a pleading." *Id.*

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Parties may move under Federal Rule of Civil Procedure 12(b) to dismiss claims for, among other enumerated defenses, a court's lack of subject matter jurisdiction and plaintiff's failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). A case is properly dismissed under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 370 (S.D. Tex. 2022). "The burden of proof for a Rule 12(b)(1) motion to dismiss [for lack of subject-matter jurisdiction] is on the party asserting jurisdiction. Accordingly, the

plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021).

"Standing is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) (quoting *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021)). To prove standing, a plaintiff must, at a minimum, demonstrate: (1) an "injury-in-fact"; (2) fairly traceable to the alleged conduct of defendant; (3) that can likely be redressed by requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury in fact must be an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* To satisfy the casual-connection prong, the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* "As for redressability, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cox v. City of Dallas*, 256 F.3d 281, 304 (5th Cir. 2001) (cleaned up).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Relevant here, to have standing to "obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Serafine v. Crump*, 800 F. App'x. 234, 236 (5th Cir. 2020) (per curiam) (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)); *see Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (per curiam) ("Merely

having suffered an injury in the past is not enough; the plaintiff must show a real or immediate threat that the plaintiff will be wronged again." (cleaned up)).

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming*, 281 F.3d at 161).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion permits dismissal of a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (same). When considering a Rule 12(b)(6) motion, a court "must accept all facts as pleaded and construe them in the light most favorable to the plaintiff." *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022). A well pleaded factual allegation need not be detailed but must be more than a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A court will "not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Castillo*, 82 F.4th at 284. To survive dismissal, well pleaded factual allegations must establish relief is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## C. Section 504 of the Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act provides in part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To avoid dismissal of a § 504 claim, a plaintiff must allege facts sufficient to prove: (1) that he is a qualified individual within the meaning of the statute; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which defendant is responsible, or is otherwise being discriminated against by defendant; and (3) that such exclusion, denial of benefits, or discrimination is solely by reason of his disability. *Doe*, 634 F. Supp. 3d at 379.[2]

A plaintiff who seeks compensatory damages under the Rehabilitation Act based on exclusion from a program or activities of a public entity, must prove the alleged discrimination was intentional. *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020). Damages for emotional distress are not recoverable under the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022).

### III. Discussion

### A. X.D. Lacks Standing to Seek Equitable Relief

X.D. lacks standing to seek equitable relief. A plaintiff who seeks equitable relief

---

[2] "In addition to prohibiting discrimination, the . . . Rehabilitation Act impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020); *see also Dudley v. Singleton*, 508 F. Supp. 3d 1118, 1142 (N.D. Ala. 2020) ("A failure to accommodate constitutes a distinct claim from a disparate treatment or intentional discrimination claim . . . ."). Here, X.D. only raises a failure to accommodate claim under Chapter 21 of the Texas Human Resources Code—not under § 504. *See* Dkt. No. 1 at 6, ¶ 41.

must allege the defendant either: (1) poses an imminent threat of harm, or (2) is currently inflicting harm. *Herman*, 959 F.2d at 1285. In the context of disability discrimination claims, courts in the Fifth Circuit and elsewhere "have applied different theories to determine if the plaintiff has standing, and there does not appear to be an established, definitive approach." *Van Winkle v. Pinecroft Ctr.*, No. CV H-16-2694, 2017 WL 3648477, at *9 (S.D. Tex. Aug. 23, 2017) (citing *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 583 (S.D. Tex. 2014)). By and large, though, courts use "two analytical frameworks for determining whether [a plaintiff alleging disability discrimination] has standing to seek injunctive relief: (1) the intent-to-return theory and (2) the deterrent-effect doctrine." *White v. Friendswood Cap. Corp.*, No. CV H-20-0496, 2020 WL 6150990, at *3 (S.D. Tex. Oct. 20, 2020) (first citing *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 405 (M.D. Pa. 2019); then citing *Van Winkle v. Houcon Partners, L.P.*, No. CV H-17-01875, 2018 WL 3543908, at *6 (S.D. Tex. July 3, 2018); and then citing *Gilkerson*, 1 F. Supp. 3d at 592). "Both approaches have been used by district courts within the Fifth Circuit." *White*, 2020 WL 6150990, at *3 (first citing *Access 4 All, Inc. v. Wintergreen Com. P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); and then citing *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 707-08 (W.D. Tex. 2010)). X.D.'s alleged facts fail to satisfy either approach.

### B. X.D. Has Not Alleged Facts Showing That He Intends to Return to TKLC

Under the intent-to-return doctrine, a plaintiff must show he intends to return to the allegedly noncompliant public accommodation and therefore faces a real and immediate threat that he will again be harmed by noncompliance. *White*, 2020 WL 6150990 at *3. The doctrine "draws support from *Lujan*, in which the United States

Supreme Court held that a plaintiff's profession of a mere 'some day' intention to return to the site of an alleged injury is not enough to show continuing, present adverse effects—particularly when the plaintiff neither describes any concrete plans to return nor even specifies when the 'some day' will be." *Id.* (citing *Lujan*, 504 U.S. at 564). Thus, a plaintiff must demonstrate a "concrete, particularized, and plausible plan to return to the out-of-compliance public accommodation that discriminated against h[im]." *Gilkerson*, 1 F. Supp. 3d at 581.

In assessing a plaintiff's "intent to return," courts consider the following four, non-exclusive factors: "(1) the proximity of plaintiff's residence to the public accommodation; (2) the plaintiff's past patronage of the public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the frequency of plaintiff's nearby travel." *Gilkerson*, 1 F. Supp. 3d at 594 (citing in part *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2013 WL 4052411, at *2 (N.D. Tex. Aug. 12, 2013)).

X.D. lives in Brownsville, where TKLC is also located. Dkt. No. 1. at 2. However, the facts alleged do not allow the Court to infer that X.D. lives near TKLC or whether there are few closer alternatives. X.D. alleges he was enrolled at and attended TKLC, but it is not clear whether he attended TKLC for more than the one day on which the discriminatory incident allegedly occurred. And though he requests in his prayer for relief that the Court "[o]rder defendant from any policy . . . that will deny Plaintiff meaningful access to . . . participate in Defendant [sic] services or that will exclude Plaintiffs [sic] from its programs," and "[o]rder Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff or other children him [sic]," the requests constitute, at best, "someday intentions" to return to TKLC "without any description of concrete plans, or indeed even any

specification of when the some day will be" which "do not support a finding of the 'actual or imminent' injury that our cases require." *Gilkerson*, 1 F. Supp. 3d at 582; *see* Dkt. No. 1 at 7. Simply, X.D. does not allege that he would return to TKLC if permitted, and no facts exist from which to infer that he would. *See generally* Dkt. No. 1.

The facts pleaded are insufficient to support a conclusion that X.D. is likely to return to TKLC. While the four-factor test is non-exclusive, X.D. does not proffer additional information or factors to consider in the Court's analysis.

**C.  X.D. Has Not Alleged Facts Showing That He is Deterred From Returning to TKLC**

The "deterrent effect" doctrine holds that a plaintiff has suffered a cognizable injury sufficient to confer standing if he is deterred from visiting a noncompliant public accommodation after becoming aware of barriers that impede access. *Gilkerson*, 1 F. Supp. 3d at 583. A plaintiff must show that he is "continually injured by being deterred from making use of the allegedly noncompliant public accommodation." *Id.* at 584 (quoting *Hunter*, 2013 WL 4052411, at *3). In assessing whether a plaintiff alleged facts that he would return to the accommodation, some courts have applied the same four-factor test used in the intent-to-return analysis. *See, e.g.*, *Cummings v. Premier Rehab, P.L.L.C.*, No. 4:18-CV-649-A, 2019 WL 227411, at *3 (N.D. Tex. Jan. 16, 2019) ("In determining whether the plaintiff alleged that she would visit the accommodation were it ADA [Americans with Disabilities Act]-compliant, courts apply the same four-factor test they use to evaluate the plaintiff's intent to return.")[3]; *Hunter*, 2013 WL 4052411, at *3

---

[3] "The close relationship between Section 504 of the Rehabilitation Act and Title II of the ADA means that precedents interpreting either law generally apply to both." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020); *see also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam) ("The [Rehabilitation Act] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts.").

("Because the plaintiff must still prove under the 'deterrent effect' method that she has an intent to return, the four-factor test applied to 'intent to return' cases also pertains to 'deterrent effect' cases to determine whether the plaintiff is in fact suffering an injury because she is being deterred from using the noncompliant accommodation.").

Alternatively, a plaintiff may establish standing by alleging that a Rehabilitation Act violation "actually affects his activities in some concrete way." *Cummings*, 2019 WL 227411, at *3 (first citing *Frame v. City of Arlington*, 657 F.3d 215, 235 (5th Cir. 2011) (en banc) (holding that plaintiffs had standing to seek injunction, because they alleged that inaccessible sidewalks forced them to take longer routes); and then citing *Deutsch*, 882 F.3d at 174 (holding that plaintiff lacked standing to seek injunction for ADA violation, because plaintiff only visited defendant's business once, showed no intent to return, and failed to show that alleged ADA violation impacted day-to-day life)).

X.D. fails to allege facts supporting any contention that he is able and ready to return to TKLC or that any alleged Rehabilitation Act violation continues to affect his activities in some concrete way. While X.D. alleges Defendants disallowed him from attending TKLC, he failed to state whether he would go back if TKLC and Arredondo permitted him to. Accordingly, he has failed to allege facts to infer that he is deterred from returning to TKLC. X.D. also alleges that ongoing harm by way of "sadness, confusion, hurt, humiliation, embarrassment and isolation" supports standing for injunctive relief. Dkt. No. 19 at 11. But even if such emotional harm could support standing, X.D.'s complaint does not allege that he continues to experience such harm, only that he "experienced" it "as a result of Defendant[s'] conduct." Dkt. No. 1 at 5.

X.D. failed to allege facts sufficient to satisfy either the intent-to-return or deterrent effect doctrines. Because X.D. failed to allege a future injury that poses either

an imminent threat or an ongoing harm, X.D. has not alleged sufficient facts to establish standing to seek equitable relief.

### D. X.D. Failed to State a Claim for Compensatory Damages

As X.D. correctly notes, "Defendants claim [he] has no standing to seek equitable relief. . . . However, [he] seeks both equitable relief and compensatory damages." Dkt. No. 19 at 8. In his Complaint, X.D. appears to seek compensatory damages for "sadness, confusion, hurt, humiliation, embarrassment, and isolation" he suffered because of TKLC's discriminatory actions. Dkt. No. 1 at 5. *But see* Dkt. No. 19 at 14 ("Plaintiff does not seek damages for emotional distress."). He also asserts that De Leon and Duran "experienced financial cost as the result of the discrimination" and "seek compensatory damages in their individual capacities." Dkt. No. 19 at 14; *see* Dkt. No. 1. at 5 ("[X.D.'s] parents also experienced financial cost as the result of the discrimination.").

Each of the injuries X.D. alleges to have suffered is emotional in nature. *Id.* The Supreme Court recently ruled that emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provision of the Rehabilitation Act. *Cummings*, 596 U.S. at 222. So, X.D. has failed to state a claim for damages in that regard. Further, De Leon and Duran filed this action as next friends of X.D.—they are not parties to this action. *See Morgan v. Potter*, 157 U.S. 195, 198 (1895) ("It is the infant, and not the next friend, who is the real and proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another."); *see also Padilla v. Mid-Ark Utils. & Rig Servs.*, No. 2:18-CV-212-Z-BR, 2022 WL 2914740, at *1 (N.D. Tex. Feb. 22, 2022) ("A next friend is a nominal party."

(citing *Morgan*, 157 U.S. at 198)). X.D. does not allege that he suffered financial difficulties, only that De Leon and Duran did, so he has failed to state a claim for damages.

X.D. offers no additional facts that lead the Court to believe he seeks compensatory damages for anything other than emotional distress. Thus, X.D. did not overcome his burden of stating a claim for which relief may be granted.[4]

### E. X.D.'s Request for Leave to Amend Complaint

X.D. "[i]n the alternative . . . seeks leave to amend and plead additional facts supporting jurisdiction" and "to clarify that [De Leon] and [Duran] seek compensatory damages in their individual capacities for Defendants' discriminatory treatment of X.D. [Jr.]." Dkt. No. 19 at 12, 14–15.

Federal Rule of Civil Procedure 15 requires a district court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins.*, 898 F.3d 461, 477 (5th Cir. 2018) (cleaned up). While leave to amend is not automatic, a district court needs "a 'substantial reason' to deny a party's request for leave to amend." *Id*. Leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Id*. (cleaned up).

Notably, X.D.'s request for leave to amend his complaint is his first. He avers that he will provide additional facts and clarity to his claims. Dkt. No. 19 at 12. Defendants had the opportunity to respond to X.D.'s request to amend in their reply in support of their

---

[4] Having found that X.D. lacks standing and a federal disability discrimination claim, the Court need not address X.D.'s remaining state law claim. *See* 28 U.S.C. § 1367(c); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . ."); *see also Heggemeier v. Caldwell County*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam) (same).

Motion; they do not assert any opposition to X.D.'s request for leave or otherwise argue that X.D. has unduly delayed his seeking leave to file his amended complaint. Dkt. No. 4; *see N. Cypress Med. Ctr.*, 898 F.3d at 477. Further, there is no evidence or argument of bad faith or dilatory motive by X.D., or any repeated failure to cure pleading deficiencies. *See N. Cypress Med. Ctr.*, 898 F.3d at 477. Defendants will not suffer undue prejudice at this early stage of the case. *See id*. And while X.D. has not filed a proposed amended complaint for the Court's review, it is likely that he can amend his complaint to properly assert at least jurisdiction. *See Van Winkle*, 2017 WL 3648477, at *10 ("Given this wide spectrum of tests for determining standing to sue [for disability discrimination], used by different courts across the Fifth Circuit, the Court finds that with some refinement in repleading Plaintiff should be able to meet the requirements of Rule 12(b)(1) through one."). The Court, then, does not find a substantial reason to deny leave to amend. Fed. R. Civ. P. 15(a)(2).

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that the Court: (1) **DENY** Defendants' Motion; and (2) **GRANT** X.D. leave to amend his Complaint within fourteen days from an order adopting this Report and Recommendation, if such an order follows.

## V.   NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SIGNED** on this **12th** day of **August, 2024**, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**