**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **Vanessa De Leon, Individually and as Next Friend of X.D, Jr. and Xavier De Leon, Individually and as Next Friend of X.D., Jr.** § § § § § | | |
| Plaintiffs, § | | |
| § | | |
| vs. § | Civil Action No. 1:24-cv-00051 | |
| § § | | |
| **Totally Kidz Learning Center and Patricia Arrellano,** § § § | | |
| Defendants. § | Jury Demanded | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Vanessa De Leon ("Vanessa"), Individually and as Next Friend of X.D., Jr., and Xavier De Leon ("Xavier"), Individually and as Next Friend of their child X.D., Jr. ("X.D.") (collectively, "Plaintiffs") through their undersigned counsel file their First Amended Complaint complaining of Totally Kidz Learning Center ("TKLC") and Patricia Arrellano ("Arrellano"), names have been corrected (collectively, "Defendants") and would show onto the Court the following:

### PRELIMINARY STATEMENT

1. X.D. is a two-year-old boy who was born with Down syndrome. This diagnosis limits some of his physical and mental abilities. He was enrolled in TKLC, a daycare owned and operated by Arrellano. Although the TKLC staff was asked to administer some medication to X.D. due to a respiratory illness, they failed to administer

1

the medication and incorrectly told Vanessa it was administered. When Vanessa pointed out the staff's mistake, she was told X.D. could no longer attend daycare at TKLC. Among other pretexts voiced, Arrellano told Vanessa that the TKLC would need a special license to continue to care for X.D. because of his special needs. On information and belief, this is untrue and was a pretext for disability discrimination. Defendants intentionally violated X.D.'s rights under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and Chapter 121 of the Texas Human Resources Code, § 121.0001, *et seq.*

      2.      Plaintiffs seek declaratory relief, compensatory damages, and attorney's fees and costs.

## PARTIES

      3.      Plaintiff X.D. is a minor who lives with his parents in Brownsville, Texas.

      4.      Plaintiff Vanessa De Leon is X.D.'s mother who lives in Brownsville, Texas. She brings this suit individually and as the next friend of her minor son, X.D.

      5.      Plaintiff Xavier De Leon is X.D.'s father, who lives in Brownsville, Texas. He brings this suit individually and as the next friend of his minor son, X.D.

      6.      Defendant Totally Kidz Learning Center is a Texas entity located in Brownsville, Texas. TKLC offers daycare services and is licensed through the State of Texas as a childcare provider for children ages four weeks through twelve years. TKLC receives federal financial assistance, including but not limited to funding from the United States Department of Agriculture. TKLC also participates in a federally funded meal program. **No citation is requested as TKLC has already been served in this suit.**

7. Defendant Patricia Arrellano owns and operates TKLC and resides in Brownsville, Texas. **No citation is requested as she has already been served in this suit.**

## VENUE AND JURISDICTION

8. Venue of this proceeding is proper in the Southern District of Texas, Brownsville Division, because all or a substantial part of the events giving rise to the Plaintiffs' claims against the Defendants occurred in Brownsville, Texas.

9. This Court has jurisdiction over this matter because this matter involves the violation of federal statutes.

## FACTUAL ALLEGATIONS

10. It has become necessary to bring this action because of the damages Plaintiffs suffered due to Defendants' actions.

11. X.D. is two years old and has Down syndrome. Vanessa and Xavier enrolled X.D. with TKLC for daycare in February 2023 so that X.D. could socialize with other children and they could work full-time. TKLC is approximately a mile and a half from where the Plaintiffs' reside. They had friends who had their children there. They pass by TKLC every weekday on their way to work. Vanessa and Xavier chose TKLC because of its location, reputation, and cost.

12. In October 2023, X.D. was hospitalized with respiratory issues and sent home with medicine and a nebulizer. On Monday, October 9, 2023, Vanessa dropped off X.D. at TKLC with his medicine and nebulizer. When Vanessa picked X.D. up from daycare, she was told that his medicine and treatment had been given, so Vanessa waited to give him the next treatment, even though he was wheezing heavily.

13. On Tuesday, October 10, 2023, when Vanessa dropped X.D. off at TKLC, she again explained to a TKLC staff member that X.D. had been in the hospital, and he needed to continue with the prescription medication he received from the hospital and administered the nebulizer during the day to help him breathe. The TKLC staff indicated they understood. When Vanessa picked X.D. up, she asked if X.D. had received the medication; the TKLC staff assured her that X.D. had received his medicine and treatment as ordered by the doctor. Vanessa noticed that X.D. was having trouble breathing.

14. On Wednesday, October 11, 2023, at night, Vanessa went through X.D.'s backpack to look for something and found all his medication unopened. X.D. had not received any medication, nor had he been administered the nebulizer treatment at the daycare for three days despite the TKLC telling Vanessa otherwise.

15. Vanessa immediately texted Arrellano about the medication error that night since she owned and operated the daycare. Arrellano responded the next day, but instead of apologizing and remedying the problem, she was told X.D. was no longer welcome at the daycare.

16. Arrellano claimed she had accommodated X.D. many times but could no longer have the child at the daycare because he needed special attention. Arrellano told Vanessa that she needed to find a new daycare.

17. Vanessa was shocked. She had been taking X.D. to the daycare for approximately seven months and had never been told his special needs were a burden or problem.

18. Vanessa asked if Arrellano was kicking X.D. out of daycare because of her staff's medication error. Arrellano responded that it must have just been a mix-up because several other children were sick at the time and also received medication.

19. Arrellano then said she could no longer care for X.D. because she needed a special license to care for special needs kids. She also said she could "get in trouble" because X.D. was in the baby room at the daycare when he was two years old.

20. Vanessa asked Arrellano to write down why X.D. was no longer welcome at the daycare and that she would pick up the written explanation when she picked up X.D. and all of his things that afternoon.

21. When Vanessa picked up X.D. and asked for the written explanation, Arrellano told her the following, " I called a couple of my friends that own daycares, and they told me not to give it to you in writing because I could get in trouble." " They told me that they never accept children with disabilities." Upon hearing this, Vanessa was distraught to hear that children like her son would intentionally be kept away from non-disabled children.

22. X.D. is nothing but sweet to others and has a beautiful smile. He makes others happy with his laughs and enjoys being around other children. He is not a threat or danger to other children.

23. Vanessa and Xavier had to take time off from their jobs to find another daycare that was as convenient as TKLC and roughly the same cost, as they were on a limited budget. When they did find a new daycare, it was further away and more expensive.

The new daycare costs were higher compared to TKLC. The new daycare is not a long-term solution for the Plaintiffs because the new daycare is further from the residence of the Plaintiffs; the Plaintiffs had already adjusted to TLKC's requests and demands for pick up and drop off, and the therapies, the necessary items needed for their child at TLKC. Because of the proximity of TLKC to the Plaintiffs' home, X.D. could be picked up early when one of the parents got out early from work. X.D. could be dropped off easily and picked up easily. A log of their son's daily activities was already created and in place. X.D. was at that daycare for seven months. X.D.'s connections with the other children during this period are irreplaceable. Many times, a person's first friends are their lifelong friends. So, not allowing him to return might affect his ability to bond in the future.

24. Vanessa and Xavier chose TKLC because of its location, reputation, and cost. They needed a daycare for X.D. to work full-time and support their family. Since X.D. had been attending TKLC for approximately seven months. X.D. was attached to the TKLC caregivers and children at the daycare. Now, X.D. is no longer welcome because of his disability. Change for Down syndrome children is difficult, and this forced change has been extremely hard for X.D. and his parents. If the Court grants them relief, Vanessa and Xavier intend to enroll X.D. back in daycare at TKLC immediately.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT

25. Plaintiffs repeat and re-allege the foregoing paragraphs in support of their claims.

26. X.D. is a qualified individual with a disability under section 504 of the Rehabilitation Act, 29 U.S.C. § 794 because he is substantially limited in major life activities, including physical and mental abilities. X.D. was the appropriate age to be enrolled at TKLC. It appears from the facts that Arrellano refused to allow X.D. to continue to attend TKLC because of his disability.

27. TKLC's actions through Arrellano and the TKLC's staff caused great harm to Plaintiffs by discriminating against X.D. and failing to treat him equally when giving him his prescribed medicines. X.D., being nonverbal at the time, could not tell his parents that he was not getting his medicine at daycare.

28. TKLC receives federal financial assistance because it has accepted federal funds from, *inter alia*, the United States Department of Agriculture.

29. Defendants discriminated against Plaintiffs based solely on his disability by excluding him from the educational programming it offers to other non-disabled children. In so doing, Defendants denied and continue to deny X.D. meaningful access and an equal opportunity to participate in and benefit from Defendant's programs and activities in violation of section 504 of the Rehabilitation Act.

30. Defendants' exclusion of X.D. was intentional.

31. Plaintiffs were injured as the result of Defendants' conduct. Vanessa and Xavier suffered compensatory damages that are recoverable under the Rehabilitation Act. They suffered financial loss in having to take off work to care for X.D. and search for a new daycare. They also suffered financial loss because the new daycare was further and would require more travel time, costing them more time and gas to drop off and pick up

X.D. No longer was it feasible for either parent to swing by and pick up X.D. on their way home.

## COUNT II
## VIOLATION OF CHAPTER 121 OF THE TEXAS RESOURCES CODE

32.     Plaintiffs re-allege the foregoing paragraphs of this Complaint and incorporate their contents into this Cause of Action by reference.

33.     By statute, it is the policy of the State of Texas "to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code § 121.001.

34.     The term "public facilities" includes "a building to which the general public is invited…and any other place of public accommodation…to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited." *Id.* § 121.00(1)(5). TKLC falls within the Code's definition of "public facility."

35.     X.D. is an individual with disabilities within the Texas Human Resources Code in that it's a child with a disability. *Id.* § 121.002(4).

36.     Based on its conduct described above, Defendants violated Chapter 121 in denying X.D. the full use and enjoyment of facilities offered to those children without disabilities, in violation of Tex. Hum Res. Code § 121.003(a), and failing to make reasonable accommodations in their policies, practices, and procedures so that X.D. would

have necessary accommodations and thus be able to have full use or access to Defendants' services in violation of Tex. Hum Res. Code § 121.003(d)(2).

39. A person, firm, association, corporation, or other organization, or the agent of a person, firm, association, corporation, or other organization who violates § 121.003 is deemed to have deprived a person with a disability of his civil liberties. *Id*. § 121.004(b).

40. A person with a disability, deprived of his civil liberties, may maintain a cause of action for damages in a court of competent jurisdiction. *Id.*

41. Therefore, Defendants discriminated against X.D. based on his disability and deprived of his civil liberty. X.D. suffered extreme emotional distress as a result of the Defendants' actions. Change for Down syndrome children is difficult, and this forced change has been extremely hard for X.D. and his parents. In excluding him from attending TKLC, he experienced shock, sadness, confusion, hurt, humiliation, embarrassment, and isolation based on his disability.

42. Vanessa and Xavier are entitled to recover compensatory damages they suffered due to Defendants' discrimination against X.D. They suffered financial loss in having to take off work to care for X.D. and search for a new daycare. They also suffered financial loss because the new daycare is further away, costing them more time and gas to drop off and pick up X.D.

## DEMAND FOR JURY TRIAL

43. Plaintiffs demand a jury trial in this action for all claims so triable.

**RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court provide the following relief:

a. Issue a declaratory judgment that Defendants' policies, procedures, and practices have subjected Plaintiffs to discrimination in violation of section 504 of the Rehabilitation Act of 1973 and Chapter 121 of the Texas Human Resources Code;

b. Order Defendants to refrain from any policy, procedure, or practice that will deny Plaintiff meaningful access to and an equal opportunity to participate in and benefit from Defendants' services or that will exclude Plaintiffs from its programs or services;

c. Order Defendants to promulgate and comply with policies and procedures to ensure that Defendants do not discriminate in the future against X.D. or other children like him;

d. Order Defendants to train all TKLC employees about its obligations pursuant to federal law and about Defendants' policy and procedures for allowing access for children with disabilities;

e. Award compensatory damages to Vaness and Xavier for their damages pursuant to Section 504 of the Rehabilitation Act of 1973 and Chapter 121 of the Texas Human Resources Code and compensate X.D. for the emotional trauma caused by Defendants actions under Chapter 121 of the Texas Human Resources Code;

f. Award reasonable costs and attorney's fees; and

g. Award any and all other relief that may be necessary and appropriate.

PREMISES CONSIDERED, Plaintiffs further pray for such other and further relief, general and special, legal and equitable, to which they may be justly entitled.

        Respectfully submitted,

        LAW OFFICE OF DOLORES G. ZARATE
        15 West Madison Street
        Brownsville, Texas 78520
        Tel: (956) 544-7727
        dzaratelaw@yahoo.com

        By: /s/ *Dolores G. Zarate*
        Dolores G. Zarate
        State Bar No. 00790771

        ATTORNEY FOR PLAINTIFFS

**Certificate of Service**

I hereby certify that on August ____, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Stephanie S. Rojo
c/o Thompson, Coe, Cousins & Irons, L.L.P.
2801 Via Fortuna, Suite 300
Austin, Texas

/s/ *Dolores G. Zarate*
Dolores G. Zarate